J-A27010-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| FRAN G. ZELLAT, AN INDIVIDUAL, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| MARY ANN MCCULLOCH, AN INDIVIDUAL AND LIBERTY MUTUAL FIRE INSURANCE COMPANY, A PENNSYLVANIA CORPORATION, | |
| Appellee | No. 1610 WDA 2014 |

Appeal from the Judgment Entered September 8, 2014
In the Court of Common Pleas of Allegheny  County
Civil Division at No(s): GD 10-006824

BEFORE:  BOWES, OLSON, AND STABILE, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED JANUARY 26, 2016**

Fran G. Zellat appeals from the judgment entered on a jury verdict in favor of Mary Ann McCulloch.  As a result of this verdict, Appellant's insurance company, Appellee Liberty Mutual Fire Insurance Company ("Liberty Mutual"), was absolved from responsibility for paying underinsured motorist ("UIM") benefits.  After careful review, we affirm.

Appellant instituted this personal injury action against Ms. McCulloch and Ms. McCulloch's husband Richard D. Beatty due to a June 23, 2008 automobile accident.  On that day, Ms. McCulloch rear-ended Appellant's vehicle.  Mr. Beatty filed a motion for summary judgment, and Appellant filed a cross-motion for partial summary judgment as to liability.  Both

motions were granted so that Mr. Beatty was dismissed as a defendant and summary judgment as to negligence was entered in favor of Appellant. Appellant then joined her motor vehicle insurance company, Liberty Mutual, as a defendant and sought UIM benefits against it.

Prior to trial, Ms. McCulloch presented a request that any mention of insurance be prohibited at trial. That motion was granted. The trial court entered an order allowing the tort case and Appellant's insurance claim to be tried together, but also mandating that insurance not be mentioned to the jurors. Pursuant to that order, the parties were not permitted to reference that Liberty Mutual was a named defendant herein.

The matter proceeded to a jury trial for a determination of whether Ms. McCulloch's negligence in rear-ending Appellant was the factual cause of any harm to Appellant. The critical issue was whether Appellant suffered any injuries due to the traffic accident. Notably, Appellant had shoulder and back problems dating back to 2002 that were so significant that she had to take OxyContin for the pain. At trial, Appellant claimed her prior physical issues pertained to her upper back and shoulders while the traffic accident caused lower back injuries that prevented her from working. She sought in excess of two million dollars in damages.

The jury was instructed that Ms. McCulloch was negligent and caused the accident. It was asked to determine whether that negligence was the factual cause of any harm to Appellant. On June 3, 2014, the jury rendered

- 2 -

a verdict in favor of Ms. McCulloch by concluding that the traffic accident did not cause Appellant harm. Thus, the jury did not reach the question of the amount of damages to award. This appeal followed the denial of Appellant's motion for post-trial relief and entry of judgment on the verdict. These issues are raised herein:

1. Did the trial court err in permitting a named party's identity to remain hidden from the jury while simultaneously permitting its counsel to participate in trial under the guise of assisting the counsel to another defendant?

2. Did the trial court err in permitting the introduction of extensive collateral source benefits and by refusing to provide a curative instruction regarding the same as requested by Appellant?

3. Did the trial court err in refusing to grant a new trial after providing the jury a misleading verdict sheet that caused confusion and prevented the jury from rendering a proper verdict?

4. Did the trial court err in permitting defendants to impeach Appellant with evidence of prejudicial prior bad acts of alleged illegal drug purchases that offered no probative value to the issue of causation?

5. Did the trial court err by refusing to strike for cause a juror who lived next to a partner of a defendant's counsel and who thereafter communicated with one defendant?

Appellant's brief at 7-8.

Appellant seeks a new trial based upon five purported errors.[1] When we review the trial court's decision to either grant or deny a new trial, we apply an abuse-of-discretion standard of review. *Czimmer v. Jansen Pharmaceuticals, Inc.*, 122 A.3d 1043 (Pa.Super. 2015). "[A]bsent a clear abuse of discretion by the trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial." *Id*. at 1051. We engage in a two-part analysis in this setting. First, we determine whether error occurred and then, "whether the error resulted in prejudice necessitating a new trial." *Id*. Under the second aspect of this test, the "consideration of all new trial claims is grounded firmly in the harmless error doctrine[.] *Knowles v. Levan*, 15 A.3d 504 (Pa.Super. 2011). We will not grant a new trial based on every irregularity occurring during the course of a proceeding. *Id*. Instead, the error in question must have affected the verdict. *Id*.

Appellant's first position is that she was denied due process because Liberty Mutual was not identified as a party defendant. Appellant's brief at 24. At the onset, we note that the "general rule in Pennsylvania is that

_____

[1] We note that Ms. McCulloch argues that several of these questions are waived due to Appellant's failure to properly develop them with post-trial argument. *See Jackson v. Kassab*, 812 A.2d 1233 (Pa.Super. 2002) (issues raised in post-trial motion must be developed with appropriate legal argument). We have elected to resolve the positions in question on alternative grounds.

evidence of insurance is irrelevant and prejudicial and justifies grant of a mistrial." ***Paxton Insurance Company v. Brickajlik***, 522 A.2d 531, 533 (Pa. 1987). The reason for this rule "is obvious: the fact-finders should not be tempted to render decisions based upon the extraneous consideration that an insurance company will actually pay the bill." ***Id***. This precept formed the basis for the ruling in favor of Appellees that the jury could not be told that Liberty Mutual was a party defendant.

Appellant's first issue is controlled by our decision in ***Stepanovich v. McGraw***, 78 A.3d 1147 (Pa.Super. 2013). Therein, Stepanovich was a pedestrian when struck by defendant/motorist McGraw. In the ensuing action, Stepanovich sued both McGraw and Stepanovich's insurance company, State Farm Insurance Company ("State Farm"). As to State Farm, Stepanovich sought UIM benefits. Prior to trial, McGraw asked that any mention of insurance be prohibited, and that request was granted. The jury therefore was not informed that State Farm was a defendant.

At trial, McGraw claimed that he was not negligent and that Stepanovich was struck because he was crossing the street outside of a crosswalk and in the face of a red light. Stepanovich countered that it was McGraw who drove through a red light. The jury determined that McGraw was not negligent. Thereafter, Stepanovich moved for a new trial, which was granted. The trial court concluded that it had erroneously ruled that State Farm could not be identified as a party to the lawsuit and that due

process mandated that the jury be informed that State Farm was a defendant.

This Court reversed, and, without addressing whether it was error to prevent the jury from knowing that State Farm was a defendant, we concluded that Stepanovich was not prejudiced by the jury's lack of knowledge that State Farm was a named party. The **Stepanovich** panel noted that, to prove prejudice, "Stepanovich would have to show that but for the jury's ignorance of State Farm's identity, it would have found McGraw negligent." **Id**. 1151. We held that there was no "legal or logical connection" between State Farm's status as a defendant and McGraw's negligence. We continued that the "mere possibility that Stepanovich could obtain benefits from his own insurer did not dictate a finding that McGraw was negligent. Therefore, the jury's determination that McGraw was negligent cannot be dependent upon or connected to the identity of the UIM carrier." **Id**. We concluded that Stepanovich could not demonstrate the necessary prejudice to establish entitlement to a new trial.

The **Stepanovich** decision is directly on point. Herein, the negligent tortfeasor and the plaintiff's UIM carrier were named defendants, and the tortfeasor successfully prevented mention of the UIM insurer's status as a party. This was the precise factual scenario at issue in **Stepanovich**. This Court ruled that the jury's lack of awareness that a UIM carrier was a party

defendant does not warrant the grant of a new trial. That holding applies herein.

In her appellate brief, Appellant relies upon *Stepanovich*. She observes that, in that case, we concluded that identifying an insurer that is liable for UIM benefits would not necessarily run afoul of Pa.R.E. 411. That rule states in pertinent part, "Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully." This Court stated in *Stepanovich* that the rule applies to introduction of proof about the defendant/tortfeasor's insurance coverage rather than evidence of a plaintiff's UIM coverage from his own insurance company. However, the fact that Pa.R.E. 411 is inapplicable does not alter the holding of *Stepanovich*, which is that a new trial is not to be awarded based upon the fact that a jury is not told that the plaintiff's UIM insurer is a party to the action.

Appellant presents a secondary contention in connection with her first claim, which is that she was unfairly "tag-teamed" by the participation of two defense lawyers, the one who represented Ms. McCulloch and the other who defended the case for Liberty Mutual. Appellant's brief at 29. In this respect, Appellant relies upon *Deeds v. University of Pennsylvania*

*Medical Center*, 110 A.3d 1009 (Pa.Super. 2015),[2] where we held that the trial court erred when it permitted two separate attorneys who each represented independent entities with potential liability to question witnesses and present argument after the parties agreed that the case would proceed against only one defendant. Herein, Appellant did not request a new trial due to the participation of both counsel for Liberty Mutual and counsel for Ms. McCulloch whereas the plaintiff in *Deeds* objected to the participation of two defense counsel. Appellant's contention consistently was that Liberty Mutual should have been identified to the jury as a party defendant, which is not grounds for a new trial. Hence, we reject Appellant's first allegation.

Appellant's second contention raised on appeal is that she is entitled to a new trial because Appellees improperly referenced her receipt of collateral source benefits. Appellant's brief at 30. The collateral source rule prohibits the introduction of proof that plaintiff has received income from another source for the purpose of reducing the amount of damages recoverable in a personal injury action. *Deeds*, *supra*. The following facts are pertinent. During trial, Appellant informed the jury that, prior to the accident, she

_____

[2] Allowance of appeal originally was granted in this decision, but our Supreme Court subsequently vacated its order granting review. *Deeds v. University of Pennsylvania Medical Center*, 2015 WL 7778420 (Pa. 2015).

financially aided her family. She implied that her income following the accident prevented her from helping her family anymore. In response, the defense elicited proof that Appellant received $7,000 to $8,000 in monthly disability benefits.

We first conclude that this issue is waived. Appellant did not level an objection at any point during or after the questioning. Instead, at the end of trial, she presented a request for a jury instruction that outlined the principle espoused by the collateral source rule. This belated attempt to remedy the situation, to which she could have instantly objected, results in waiver. *Allied Electric Supply Co. v. Roberts*, 797 A.2d 362 (Pa.Super. 2002) (litigant waived right to claim error with respect to receipt of infirm evidence in that litigant failing to make timely and specific objection when proof was received and instead waited until witness's testimony was completed).

Furthermore, the jury herein determined that the accident in question was not the factual cause of any harm to Appellant. The fact that Appellant received disability income was relevant only to the amount of damages that the jury would have awarded to Appellant, had it reached that issue. However, the jury never deliberated on how much to award Appellant and instead decided that Appellant was not entitled to any compensation. We therefore find that the jury's receipt of evidence of collateral source income was harmless error. *See Knowles*, *supra* (where liability was conceded and jury was asked to determine only issue of damages, tortfeasor's

ingestion of drugs and alcohol prior to accident constituted harmless error as that improper proof related to liability rather than damages).

Appellant's third position is that she is entitled to a new trial because the verdict slip incorrectly asked the jury to determine whether the accident was the factual "case" rather than factual "cause" of any harm to Appellant. Appellees counter that this issue is waived since Appellant did not object to the verdict slip on this basis before it was submitted to the jury. Appellant responds to the waiver position by maintaining that she did not view that document at trial. However, the record belies this assertion.

At the jury charging conference, Appellant and Ms. McCulloch both submitted verdict slips. N.T. Trial, 5/30/14-6/2/14, at 590 (Ms. McCulloch); *Id*. at 591 (Appellant). Thereafter, the trial court indicated that they had "a little bit of discussion off record regarding two proposed verdict sheets." *Id*. at 592. The court told Appellant that it was "inclined to go with Defendant's proposed verdict slip," and that, if she wanted "to say anything for the record, you certainly may do so." *Id*. Appellant did not object to the verdict slip that the court proposed to use on the basis that "cause" was misspelled as "case." Rather, she leveled other objections to it. *Id*. at 592-93. Thus, the record disproves any assertion that Appellant did not review the verdict slip in question before it was submitted to the jury, and Appellant did not preserve her current objection to it.

We also concur with the trial court that the typographical error on the sheet was inconsequential in that the jury was properly instructed on factual cause and it was well aware that factual cause rather than factual case was the issue it was to resolve. ***Commonwealth v. Antidormi***, 84 A.3d 736 (Pa.Super. 2014) (mislabeled verdict slip did not warrant new trial where jury was otherwise properly instructed on concept in question). Our review establishes that, before it was sent out to deliberate, the jury was clearly informed that it was to decide whether the accident was the factual cause of Appellant's injuries, and the term "factual cause" was used seven times. N.T. Trial, 5/30/14-6/2/14, at 704-05. The jury thereafter asked a question and was given instructions where the term "factual cause" was used an additional eight times. ***Id***. at 725-27. Therefore, the trial court did not abuse its discretion in declining to grant a new trial on the basis of the mistake on the verdict slip.

Appellant's next allegation of error is that she should receive a new trial because she was improperly cross-examined about the contents of a doctor's note in her medical record. We observe that, "The scope and manner of cross-examination are within the sound discretion of the trial court and will not be overturned unless the court has abused that discretion." ***In re M.W.***, 972 A.2d 1213, 1216 (Pa.Super. 2009). The doctor's note that was the basis for the questioning indicated that Appellant had purchased OxyContin on the street because her pain was not abated by

the amount of that drug that had been prescribed. Appellant twice denied that the note was accurate. The trial court ruled that the questioning could proceed as it related to whether Appellant suffered harm from the accident. The testimony in question, the trial court reasoned, was highly pertinent to the level of pain that Appellant was experiencing prior to 2008 and thus the extent of her medical problem prior to the accident.

Proof that a litigant committed "a crime, wrong, or other act" is inadmissible solely to establish "a person's character in order to show that on a particular occasion the person acts in accordance with the character." Pa.R.E. 404(b)(1). However, prior bad acts proof can be admitted into evidence for a variety of reasons "where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character." *Commonwealth v. Tyson*, 119 A.3d 353 (Pa.Super. 2015).

In this case, the questioning was not conducted to reveal that Appellant regularly bought OxyContin on the street. Rather, it was used to demonstrate the severity of Appellant's injuries before 2008. The defense herein was singularly focused on whether Appellant's purported harm was the result of the 2008 accident or was due to her medical condition that arose in 2002. Hence, the trial court did not abuse its discretion in allowing the questioning.

We also observe that Appellant's appellate argument as to this issue is devoted solely to the position that the evidence in question was improperly

admitted under Pa.R.E. 608, which relates to impeachment of a witness regarding his character for truthfulness or untruthfulness. This objection was not the one raised in the trial court, and, accordingly, her argument on appeal is waived.

Appellant's final position is that the trial court erred in denying her challenge for cause to a juror who was a neighbor of the founding shareholder of the firm of one of the defense lawyers. "A challenge for cause should be granted when the prospective juror has such a close relationship, familial, financial, or situational, with the parties, counsel, victims, or witnesses that the court will presume a likelihood of prejudice" or, alternatively, when the juror "demonstrates a likelihood of prejudice by his or her conduct and answers to questions." *Shinal v. Toms*, 122 A.2d 1066 (Pa.Super. 2015). The former situation is at issue herein. Hence, our standard of review of the denial of the challenge for cause is subject to ordinary review. *Id*.

The juror in question did not have such a close relationship with defense counsel that there was a likelihood of prejudice. The juror knew who the founding shareholder was and would occasionally see that shareholder walking her dog. This attenuated relationship with actual defense counsel does not provide a basis for removal from the jury panel for cause.

In connection with this assertion, Appellant also mentions, in passing, that the juror spoke with defense counsel. However, the trial court ascertained that the juror merely asked what time the jurors were required to return to the courtroom, and the lawyer answered that inquiry. Although counsel should not interact with jurors during the course of trial, we find no abuse of discretion in the trial court's declining to award a new trial based on this interaction between counsel and the juror.

Judgment affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/26/2016