J-A08009-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ROBERT KIRKSEY, JR. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHILDREN'S HOSPITAL OF | : | No. 421 WDA 2018 |
| PITTSBURGH OF UPMC, UNIVERSITY | : | |
| OF PITTSBURGH PHYSICIANS, AND | : | |
| SATYANARAYANA GEDELA, M.D. | : | |

Appeal from the Judgment Entered April 12, 2018
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD 14-010939

BEFORE: PANELLA, P.J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY PANELLA, P.J.: **FILED OCTOBER 9, 2019**

Appellant, Robert Kirksey, Jr. ("Kirksey"), challenges the judgment entered in the Allegheny County Court of Common Pleas, following a jury trial on issues of medical malpractice. Kirksey filed suit against his physician, Appellee Satyanarayana Gedela, M.D. ("Gedela"), and Gedela's employers, Children's Hospital of Pittsburgh of UPMC and University of Pittsburgh Physicians (collectively, "Appellees"), after Kirksey developed Stevens-Johnson Syndrome[1] as a child. Kirksey theorized that Gedela's negligent

---

[1] While the record does not offer a succinct definition of Stevens-Johnson Syndrome, it suggests that Kirksey suffered a severe immune reaction requiring extensive hospitalization. The Mayo Clinic describes Stevens-Johnson as beginning "with flu-like symptoms, followed by a painful … rash that spreads and blisters." Mayo Clinic, *Stevens-Johnson syndrome*, https://www.mayoclinic.org/diseases-conditions/stevens-johnson-syndrome/symptoms-causes/syc-20355936 (last visited Sept. 20, 2019).

administration of prescription drugs caused the condition, which triggered blistering and scarring over a substantial portion of Kirksey's body. The jury found Gedela had not acted negligently, and the court entered judgment in favor of Appellees. After careful review of Kirksey's issues on appeal, we affirm.

The relevant facts and procedural history of this case are as follows. Kirksey, born in 1995, began suffering from seizures at age two. As part of his treatment, Kirksey was prescribed Depakote, a seizure medication. Despite the medication, Kirksey periodically continued to experience seizures. And after Kirksey's twelfth birthday, his mother began to notice changes in Kirksey's attentiveness. She brought Kirksey to an appointment with Gedela, who had inherited the case from Kirksey's previous physician. Gedela decided to reduce Kirksey's dosage of Depakote, and to pair the remaining dosage with another drug, Lamictal.

On May 25, 2007, about one month after Gedela's changes to his medicine, Kirksey was admitted to the emergency room after complaints of a rash on his body and mouth sores. He was diagnosed with Stevens-Johnson Syndrome. Kirksey spent a month in the hospital. After he was released, Kirksey continued to suffer from scarring and other effects of the illness.

On June 23, 2014, Kirksey filed a complaint against Appellees, based on theories of medical professional negligence and *respondeat superior*. Appellees filed an answer and new matter. Before trial, Kirksey filed several motions *in limine*, seeking, among other things, to redact parts of Kirksey's

medical record and to identify the origin of any demonstrative exhibits. The court issued orders granting Kirksey's motions.

The case proceeded to a jury trial. After deliberations, the jury determined Gedela had not acted negligently in his care of Kirksey. Kirksey filed post-trial motions on a litany of issues. One of these challenges incorporated an affidavit written by Kirksey's counsel, who alleged he discovered after trial that one of the jurors was affiliated with Appellees. Appellees, in turn, responded by asking the court to strike the affidavit. Following argument, the court denied all of the post-trial motions.

Kirksey filed a timely notice of appeal, and complied with the court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellees also filed a timely notice of cross-appeal, and complied with Rule 1925(b). However, after doing so, Appellees chose to discontinue their cross-appeal. [2] This appeal is now properly before us.[3]

_____

[2] In their brief, Appellees ask this Court to disregard or strike portions of Kirksey's reproduced record. **See** Appellees' Brief, at 60. According to Appellees, Kirksey has improperly included documents in his reproduced record that are not part of the certified record. We remind the parties, "this Court may only rely on what appears in the certified record. A document does not become part of the official record simply by including a copy in the reproduced record." **Krosnowski v. Ward**, 836 A.2d 143, 148 (Pa. Super. 2003) (citations omitted). While we decline to strike, we will not consider items in the reproduced record that are not part of the certified record.

[3] After the parties filed their respective notices of appeal, this Court issued a rule to show cause directing the parties to request that judgment be entered in the case, as required by Pa.R.A.P. 301. Thereafter, the trial court prothonotary entered judgment. Accordingly, we will consider the appeals as

In his first issue, Kirksey contends Appellees violated the court's pretrial order, which required Appellees' counsel to identify the origin of his demonstrative exhibits. Kirksey alleges that Appellees' counsel "falsely and repeatedly misquote[ed] the report of [Kirksey's expert witness] and then publish[ed] the false information to the jury through the use of a demonstrative exhibit." Appellant's Brief, at 27. He believes the court erred by denying his motion for a new trial on this basis. We disagree.

When reviewing the denial of a motion for a new trial, we determine whether the trial court committed an error of law that controlled the outcome of the case, or abused its discretion. *See Corvin v. Tihansky*, 184 A.3d 986, 992 (Pa. Super. 2018).

"The purpose of pretrial motions *in limine* is to give the trial judge the opportunity to weigh potentially prejudicial and harmful evidence before the trial occurs, thus preventing the evidence from ever reaching the jury." *Buttaccio v. American Premier Underwriters, Inc.*, 175 A.3d 311, 320 (Pa. Super. 2017) (citation and internal quotation marks omitted).

"The grant of a motion *in limine* is a court order that must be observed." *Poust v. Hylton*, 940 A.2d 380, 385 (Pa. Super. 2007) (italics added). "When a party intentionally violates a pre-trial order, the only remedy is a new trial, in order to promote fundamental fairness, to ensure professional respect for

---

having been filed after the entry of judgment. *See McEwing v. Lititz Mut. Ins. Co.*, 77 A.3d 639, 645 (Pa. Super. 2013) (considering appeal from verdict as having been taken from judgment, despite judgment's entry after filing of appeal, in accordance with Pa.R.A.P. 905(a)).

the rulings of the trial court, to guarantee the orderly administration of justice, and to preserve the sanctity of the rule of law." ***Mirabel v. Morales***, 57 A.3d 144, 151 (Pa. Super. 2012) (citation and internal quotation marks omitted).

Here, Kirksey filed a pretrial motion to "cause defense counsel to correctly identify the origin of exhibits." Kirksey's Motion *in Limine*, filed 11/14/17, at 2. Counsel for Kirksey alleged this motion was based on Appellees' counsel's failure to disclose where a demonstrative exhibit originated in a previous case. ***See*** N.T. Hearing, 11/22/17, at 10. The court stated that it would not consider the previous case to which Kirksey's counsel referred, yet it granted the motion. ***See id***.

At trial, Appellees' counsel showed several witnesses a demonstrative exhibit called "Panel One." ***See*** N.T. Trial, 11/28/17, at 364-365; N.T. Trial, 11/30/17, at 741-742. The exhibit contained a statement culled from the report made by Kirksey's expert witness, Dr. William DeBassio.

We find it unnecessary to recapitulate or analyze the statement contained in Panel One, as it is irrelevant to Kirksey's issue on appeal. Kirksey claims Appellees violated the pretrial order requiring them to disclose the origin of Panel One. But Kirksey himself identifies precisely where the report, used by Appellees as a demonstrative exhibit, originated – from Kirksey's own expert. ***See id***. Kirksey provides no evidence to support a conclusion that the information contained in Panel One was from a source other than DeBassio's report. As such, he has failed to show that Appellees violated the pretrial order.

Instead, Kirksey attempts to shoehorn his objection regarding the *content* of Panel One into a claim about the exhibit's source. As the two matters are unrelated, Kirksey's motion *in limine* regarding the origin of demonstrative exhibits cannot be said to have preserved a specific objection to the content of Panel One. To the extent Kirksey wishes to challenge the exhibit as misleading, he failed to object to the introduction of the exhibit at trial. **See** N.T. Trial, 11/28/17, at 364-365; N.T. Trial, 11/30/17, at 741-742. Thus, this claim is waived. **See** Pa.R.A.P. 302(a) (dictating that issues not raised in the lower court are waived for purposes of appeal).

In Kirksey's second issue, he contests the trial court's admission of evidence. He believes that arguments about the applicability of Table 11, an exhibit showing the Lamictal manufacturer's recommended dosage escalation plan for patients older than 12 years, should have been excluded from evidence, because Kirksey was only 12 years old at the time Gedela administered the Lamictal. Kirksey asserts the jury was confused by Appellees' arguments that Kirksey was over 12 years old at the time of his reaction to the Lamictal, and the trial court erred in admitting these.

The admission of evidence is within the sound discretion of the trial court; we will only reverse an evidentiary determination if the court committed an abuse of discretion. **See Czimmer v. Janssen Pharmaceuticals, Inc.**, 122 A.3d 1043, 1058 (Pa. Super. 2015). "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." **Id**. (citation omitted).

Evidence that tends to prove or disprove a material fact is relevant. ***See American Future Systems, Inc. v. BBB***, 872 A.2d 1202, 1212 (Pa. Super. 2005) (citation omitted). "Relevant evidence is admissible if its probative value outweighs its prejudicial impact." ***Id***. "'Unfair prejudice' supporting exclusion of relevant evidence means a tendency to suggest decision on an improper basis or divert the jury's attention away from its duty of weighing the evidence impartially." ***Klein v. Aronchick***, 85 A.3d 487, 498 (Pa. Super. 2014) (citation omitted).

Here, Kirksey introduced tables sourced from the Lamictal manufacturer's recommended dosage levels. N.T. Trial, 11/29/17, at 533; 12/1/17, at 913. The first, referred to as Table 9, dictated appropriate levels of Lamictal for epileptic patients ages 2-12 who were also taking Depakote or similar medications.[4] ***See*** Plaintiff's Exhibit 7. The second, Table 10, introduced a weight-based dosing guide for epileptic patients ages 2-12 taking Lamictal in conjunction with Depakote. ***See id***. The third, Table 11, recommended an escalation regimen of Lamictal for epileptic patients over 12 years of age also taking Depakote. ***See id***.

---

[4] Specifically, the tables refer to patients taking valproate. Valproate is a prescription drug used to treat seizures; Depakote, one of the medications taken by Kirksey at the time he developed Stevens-Johnson syndrome, is a trade name for valproate.
***See*** Food and Drug Administration, *Valproate Information*, https://www.fda.gov/drugs/postmarket-drug-safety-information-patients-and-providers/valproate-information (last visited Sept. 17, 2019).

Kirksey contends on appeal that Appellees should not have been permitted to argue that Table 11 applied to Kirksey. This view fails to account for the fact that Kirksey himself introduced Table 11 into evidence. After putting the offending document into evidence, Kirksey cannot now fairly assert that Table 11 was inapplicable or that the court should have prevented Appellees from asserting its relevance. Indeed, as the case centered on whether Dr. Gedela was negligent for prescribing Kirksey a higher dose of Lamictal than that recommended for average 12 year olds, preventing Appellees from explaining why Gedela may have deviated from the dosing chart would have directed the verdict in favor of Kirksey.

Further, Kirksey's contention on appeal misinterprets Appellees' trial arguments. He maintains Appellees attempted to confuse the jury about Kirksey's age at the time he took Lamictal. However, Appellees actually argued at trial that Table 11 was applicable because of Kirksey's weight. Kirksey's own expert witness, Dr. L. Douglas Wilkerson, testified that "all medications in pediatrics are pretty much dosed on the basis of weight." N.T. Trial, 11/28/17, at 338. Appellees went on to argue that Table 11, dictating a Lamictal escalation regimen for epilepsy patients over 12 years old, applied because Kirksey exceeded the top weight limit associated with patients between 2 and 12 shown in Tables 9 and 10. **See id**., at 372-373; N.T. Trial, 11/30/17, at 639. Thus, we are unconvinced by Kirksey's assertion that

Appellees "fabricated age theory evidence," and that the trial court erred by permitting Appellees to argue about the relevance of Table 11.[5]

Kirksey's third issue consists of two separate arguments. He contends the court erred by permitting Appellees to introduce evidence that Dr. Gedela informed Kirksey of the potential side effects of Lamictal, and that it again erred by failing to instruct the jury on assumption of the risk.

To succeed on a claim of medical negligence, a plaintiff must prove that the doctor's treatment deviated from acceptable medical standards. **See Fetherolf v. Torosian**, 759 A.2d 391, 393 (Pa. Super. 2000). While our Supreme Court has found that defendant physicians may not insulate themselves from negligence actions by claiming the patient assumed the risks of treatment, evidence of such risks may still be admissible where it reflects the doctor's awareness of possible complications. **See Brady v. Urbas**, 111 A.3d 1155, 1161-1162 (Pa. 2015). Evidence about the risks of treatment may be relevant in establishing the standard of care. **See id**., at 1161.

We note, "[a] trial judge has wide latitude in his or her choice of language when charging a jury, provided always that the court fully and adequately conveys the applicable law." **Sears, Roebuck & Co. v. 69th**

---

[5] We find Kirksey has waived his contention that Appellees' counsel misstated the language of Table 11 in his closing argument. While Kirksey timely objected to counsel's assertion, he failed to include this specific contention in his Rule 1925(b) statement, and this issue is not fairly discernable from the statement of issues provided on appeal. **See HSBC Bank, NA v. Donaghy**, 101 A.3d 129, 133 n. 7 (Pa. Super. 2014) (failure to include argument in statement pursuant to Pa.R.A.P. 1925(b) necessitates waiver). As a result, we will not address it.

*Street Retail Mall, L.P.*, 126 A.3d 959, 978 (Pa. Super. 2015) (citation omitted). We review the court's jury instructions for an abuse of discretion or error of law. *See id*. We review the charge as a whole to determine if it confused or misled the jury. *See id*.

Here, Kirksey filed a pretrial motion to exclude evidence regarding the potential that rash could occur as a side effect of taking Lamictal. The court denied Kirksey's motion, and permitted testimony about Gedela's warning of the risk of rash. *See* N.T. Hearing, 11/22/17, at 55. At trial, Gedela testified that taking Lamictal incurred a potential, but rare, risk of rash. *See* N.T. Trial, 11/30/17, at 626. Appellees also presented testimony from another doctor, who testified the standard of care required that Gedela balance the risk of rash against the risk of the seizures that Gedela prescribed Lamictal to cure. *See id*., at 736, 741.

At the charging conference, the court rejected Kirksey's request to give a jury instruction that assumption of the risk was not an applicable defense. *See* N.T. Trial, 11/30/17, at 794. The court stated assumption of the risk had not been introduced as a defense during trial, and that it did not find a jury instruction to be appropriate. *See id*.

We cannot find the court abused its discretion in permitting Appellees to introduce evidence of the risk of rash as part of establishing the standard of care. The only evidence pertaining to the risk of rash was introduced to show Gedela's own awareness of the potential side effects of combining

Lamictal with Depakote. Neither party introduced evidence regarding Robert's consent to treatment.

As such, the court's rejection of Kirksey's proposed jury instruction was not an abuse of its discretion. While Kirksey's proposed instruction was a valid statement of the law, the court appropriately deemed it irrelevant to the case, as no party had introduced evidence regarding consent. This issue is without merit.

In Kirksey's fourth issue, he challenges the court's refusal to release requested exhibits to the jury.

Pennsylvania Rule of Civil Procedure 223.1 provides that the court "*may* make exhibits available to the jury during its deliberations[.]" Pa.R.C.P. 223.1(d)(3). "[T]he trial court has the discretion to determine which exhibits should be permitted to go out with the jury." ***Wagner by Wagner v. York Hosp.***, 608 A.2d 496, 503 (Pa. Super. 1992) (citation omitted).

While Kirksey concedes the court has discretion in deciding whether to release exhibits to the jury during deliberations, he contrarily argues that the court erred by failing to provide the exhibits to the jury, as these would have "clear[ed] up any confusion" by "demonstrat[ing] inconsistencies in the defense." Appellant's Brief, at 50.

The jury requested eleven exhibits during its deliberations, including expert reports and medical records. ***See*** N.T. Trial, 12/1/17, at 912-914. After argument from the parties, the court denied the request. ***See id***., at 921. The court stated it was concerned the jury would improperly focus on portions of

the exhibits unaddressed by the parties at trial, such as the lengthy, unrelated notes in Kirksey's medical records. *See id*.

Kirksey fails to show the court abused its discretion in denying the request for exhibits. His suggestion that this alleged error exacerbated juror confusion at trial relies on proving the other arguments in his brief – arguments we have already rejected as meritless. Indeed, the court prudently reasoned that withholding the requested exhibits from the jury would prevent juror confusion, by requiring the jurors to rely on their memory of key facts from trial. We fail to see how this constituted an abuse of discretion, and so reject Kirksey's fourth claim.

Next, Kirksey claims the court erred by permitting Appellees' expert, Dr. Harry Abram, to testify outside of his expert report.

Pennsylvania Rule of Civil Procedure 4003.5 directs that testimony of an expert at trial "may not be inconsistent with or go beyond the fair scope of his or her testimony in the discovery proceedings[.]" Pa.R.C.P. 4003.5(4)(c). Our Supreme Court has observed that the chief purpose of the rule is to prevent unfair surprise at trial. *See Polett v. Public Communications, Inc.*, 126 A.3d 895, 921 (Pa. 2015). In evaluating whether unfair surprise has occurred, "[t]he question is whether the discrepancy between the expert's pretrial report and his trial testimony is of a nature which would prevent the adversary from preparing a meaningful response, or which would mislead the adversary as to the nature of the appropriate response." *Corrado v. Thomas Jefferson University Hosp.*, 790 A.2d 1022, 1029 (Pa. Super. 2001) (citation omitted).

On direct examination, Appellees' expert witness Dr. Abram testified that Stevens-Johnson syndrome, "is an allergic reaction. It can happen on a little bit of Lamotrigine or a lot of Lamotrigine. An allergic reaction, it just takes a molecule to trigger the reaction." N.T. Trial, 11/30/17, at 737.

Kirksey's counsel objected to the testimony as outside of the witness's expert report. *See id*., at 738. At sidebar, the court determined that Abram's report included a discussion of Kirksey's reaction as idiosyncratic and unpredictable, and so deemed the report fairly encompassed the allergy testimony. *See id*., at 739. The court denied Kirksey's objection. *See id*.

Abram's testimony focused on the unpredictable nature of Lamictal reactions. *See id*., at 737-748. Kirksey's counsel conceded even during sidebar that Abram's report discussed the risk of Stevens-Johnson syndrome as idiosyncratic. *See id*., at 739. Kirksey's objection was premised on whether an allergy could be fairly described as idiosyncratic or unpredictable; the court determined it could be. *See id*. As Kirksey presented extensive testimony to rebut Appellees' contentions that the reaction was in fact unpredictable, he cannot be said to have been unfairly surprised by Abram's testimony.

Moreover, trial testimony from Kirksey's own expert witness, Dr. Wilkerson, demonstrates that Kirksey was able to prepare and present a meaningful response to this potentially unfavorable testimony. Kirksey questioned his expert physician on direct examination about the medical definition of the word "allergy," and asked if it pertained to Kirksey's case. *See* N.T. Trial, 11/28/17, at 336. The physician, Dr. Wilkerson, stated that

Kirksey's case could not be fairly considered an allergy case, as it was an unusually severe drug reaction brought on by too much medication. ***See id*.**, at 337. Thus, the court did not abuse its discretion in rejecting Kirksey's request to exclude Abram's testimony.

In Kirksey's last issue, he argues he is entitled to a new trial on the grounds that one of the jurors had a conflict of interest she failed to disclose before the verdict was rendered. According to Kirksey, he discovered after trial that Juror Number Seven had admitting privileges at University of Pittsburgh Medical Center (UPMC) hospitals, and had previously been employed as a family physician at a UPMC facility. Kirksey avers prejudice should be presumed in this situation, and he is entitled to a new trial or, at minimum, an evidentiary hearing. We disagree.

We review *de novo* the trial court's determination regarding juror exclusion on the grounds of prejudice stemming from a relationship to the parties. ***See Shinal v. Toms***, 162 A.3d 429, 441 (Pa. 2017).

"We begin our analysis by recognizing that the right to a trial by an impartial jury is enshrined in the Pennsylvania Constitution[.]" ***Bruckshaw v. Frankford Hosp. of City of Philadelphia***, 58 A.3d 102, 108 (Pa. 2012) (citations omitted). "To this end, we go to great lengths to protect the sanctity of the jury. Through the *voir dire* process individuals with bias or a close relationship to the parties, lawyers or matters involved are examined and excluded." ***Id*.**, at 110 (citations omitted).

We presume the likelihood of prejudice where the juror's relationship with the parties, counsel, victims, or witnesses is "sufficiently close." **Shinal**, 162 A.3d at 441. However, we take care to note that "[t]he mere existence of some familiar, financial, or situational relationship does not require dismissal in every case." **Id**., at 443.

Here, Kirksey's counsel submitted an affidavit following trial, which accompanied his post-trial motions. The affidavit begins by chronicling Gedela's behaviors during trial, including allegations that Gedela "smiled and laughed" "nearly immediately any time he was outside the presence of the jury." Affidavit, filed 12/11/17, at 2. Counsel then stated that after the "odd and troubling" verdict, he "began to conduct research" about Juror No. 7. **Id**., at 3. The affidavit emphasizes that Juror No. 7 was originally an alternate juror, who was chosen after the original Juror No. 7 was excused for a work hardship, though the original juror "did not claim hardship during the voir dire process less than one week previous." **Id**.

The affidavit avers that, while the juror currently works as a physician for the competing Forbes/Allegheny Health Network, informal searching counsel did on websites such as "sharecare.com" led him to a determination that Juror No. 7 was, in some nebulous way, affiliated with UPMC. **Id**., at 4. The affidavit concedes that "substantial voir dire questioning occurred" and that the replacement Juror No. 7 had disclosed that she was a physician who had attended the University of Pittsburgh's medical school (affiliated with UPMC) for her training. **Id**., at 3. The affidavit summarily concludes that Juror

No. 7 inappropriately failed to disclose past contacts with UPMC. *See id*., at 4.

Kirksey's post-trial motion incorporated the allegations of the affidavit in its demand for a new trial. In its opinion, the trial court rejected Kirksey's accusations, and counsel's affidavit, as "reckless and unworthy of additional consideration on appeal." Trial Court Opinion, filed 6/19/18, at 15.

While this Court is always troubled by accusations of juror prejudice, Kirksey has utterly failed to show a) that a close relationship between Juror No. 7 and UPMC exists, and b) that Juror No. 7 did not disclose its existence. While Kirksey's brief claims Juror No. 7 concealed that she previously worked for UPMC Shadyside (a separate branch of the UPMC network and not one of the Appellees in this case), the exhibit attached to counsel's affidavit clearly shows that information printed as part of the juror's education with the University of Pittsburgh. *See id*., at Exhibit 59. Indeed, counsel's affidavit concedes Juror No. 7 did disclose her medical training at the University of Pittsburgh, and that she now works as a physician at a *competing* hospital. *See* Affidavit, filed 12/11/17, at 3-4. The remainder of the affidavit and the brief rely on insinuation in the absence of a demonstrable connection between Juror No. 7 and UPMC.

Finally, we note that even if Kirksey had demonstrated such a relationship, UPMC itself is not one of the parties in this action. Kirksey only filed suit against Appellee Children's Hospital of Pittsburgh of UPMC, which is

merely part of the UPMC network. Kirksey does not allege that Juror No. 7 has any affiliation with Appellee Children's Hospital of Pittsburgh of UPMC.

Though as Kirksey observes, we are "inclined to tip the balance in favor of insuring a fair trial," *Schwarzbach v. Dunn*, 381 A.2d 1295, 1298 (Pa. Super. 1977), we are unable to conclude that Kirksey was given anything but, based on the evidence before us. We are entirely unconvinced that Kirksey has shown a sufficiently close enough relationship exists to warrant a presumption of prejudice. As such, we decline to grant relief on this argument.

Because Kirksey has failed to demonstrate grounds for relief, we affirm the judgment entered in this case.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/9/2019