J-S19015-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRIAN ANTHONY | : | |
| | : | |
| Appellant | : | No. 1011 WDA 2020 |

Appeal from the Judgment of Sentence Entered April 15, 2020
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-MD-0000174-2020

BEFORE:   DUBOW, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY DUBOW, J.:                          **FILED: AUGUST 20, 2021**

Appellant Brian Anthony appeals from the Judgment of Sentence entered April 15, 2020, following his conviction of indirect criminal contempt (ICC) after he violated, for the third time, a Protection from Abuse ("PFA") Order.  Appellant asserts the trial court erred in its timing of the ICC hearing and abused its discretion in admitting certain evidence.  He also challenges the sufficiency of the evidence supporting this third ICC conviction.  After careful review, we affirm.

The relevant facts and procedural history are as follows.  Appellant and the victim had lived together as romantic partners for four years.  On December 17, 2019, the court entered a final PFA Order directing Appellant not to have "ANY CONTACT" with the victim.  Appellant subsequently violated

_____

[*] Retired Senior Judge assigned to the Superior Court.

the PFA Order twice and the court sentenced him to a period of incarceration of three to six months after the first violation, and a consecutive sentence of six months after the second violation.

While serving his second ICC sentence, Appellant sent seven letters over a period of 2½ weeks addressed to himself at the victim's address. The victim did not open the letters. On March 27, 2020, she filed an ICC Complaint alleging Appellant had again violated the PFA Order. Appellant appeared before a magistrate on March 31, 2020, and signed a hearing notice informing him that the court had scheduled the hearing on this third ICC Complaint for April 15, 2020.

At the start of the hearing on April 15, 2020, Appellant's counsel requested that the court dismiss the matter because the hearing date was more than ten days after the filing of ICC Complaint, in violation of 23 Pa.C.S. § 6113. The court denied counsel's request, noting that (1) the scheduling of the hearing was a direct result of the COVID-19 pandemic; (2) all time frames then in existence "under any statutory provision" had been suspended by the Pennsylvania Supreme Court's Emergency Judicial Order and the Erie County Court of Common Pleas' COVID Emergency Judicial Order; and (3) Appellant had not suffered prejudice because he was currently in jail serving his second ICC sentence.

The ICC hearing proceeded. The victim testified that between March 11, 2020, and April 6, 2020, seven letters arrived at her residence from Appellant that were addressed to Appellant, with notation in the return

- 2 -

address of Appellant's name and prison identification number.  The court admitted the unopened envelopes with no objection from Appellant.  ***See*** N.T. Hr'g, 4/15/2020, at 12.  The victim testified, *inter alia*, that Appellant was no longer on the home's lease, and that after living with Appellant for four years, she easily identified the handwriting on the envelopes as belong to Appellant and not to a third party.[1]  Her testimony concluded after she stated on cross-examination that she did not open the letters because they were not addressed to her.  The prosecution then conducted a brief re-direct examination.

After the victim testified, the court asked if either party had "a desire" to open the letters to read their contents since they had been admitted as a government exhibit.  ***Id.*** at 18.  Appellant's counsel argued that the sole basis of the ICC Complaint was that the envelopes were sent and the contents were, therefore, irrelevant.  The court noted counsel's relevancy objection and informed the parties that they were authorized to open the letters "[i]f either party believes that they're evidence that they'd want to submit." ***Id***.  The court directed that the letters were not to be shown or read to the victim. ***Id***. at 18, 21, 23.  The court also informed the prosecutor that there was still an outstanding relevancy objection which he would be required to address if he believed the contents were relevant. ***Id.*** at 18-19, 22.  Appellant's counsel

_____

[1] The victim testified that when she received envelopes addressed to Appellant from third parties, she would return them to the sender.

again objected to the relevance of the letters' contents, in addition to objecting based on a lack of foundation and the authenticity of the letters. *Id*. at 22.

After counsel for both parties reviewed the letters, the Commonwealth stated that portions of the letters were relevant to demonstrate that Appellant intended to harass and threaten the victim. Appellant's counsel renewed his relevancy objection, which the court overruled. The court then dismissed the victim.

The prosecutor then stated it had no other witnesses but asked if the court would allow him to read the contents of some of the letters into the record. The court denied the request, noting that the letters and the envelopes had been admitted "so they are as they are," and informed the prosecutor: "I'll let you[] argue at the end how it may be relevant if we get to that point." *Id.* at 24. The court then asked if Appellant wanted to present any witnesses or testimony. Appellant's counsel replied "no," and the court directed defense counsel to present his closing argument first. *Id*. at 24.

Counsel argued only that the Commonwealth "has not been able to tie beyond a reasonable doubt that my client was the sender . . . of the envelopes in this case . . . [s]o I would argue that there's been no contact proven by the Commonwealth and there's no indirect criminal contempt proven." *Id.* at 25. During its closing, the Commonwealth, *inter alia*, read some of the letters to the court to highlight content that was specifically directed to the victim and contained abusive and threatening language.

The court concluded that Appellant had volitionally sent the seven envelopes within a short period of time with the intent to harass the victim in violation of the provision of the PFA directing that he have no contact with the victim. The court also found that Appellant had "engag[ed] in a course of conduct including harassing, stalking type behavior," and noted that it had considered the content of the letters to address Appellant's challenge "that the letters may not have been directed to [the victim] or cannot be attributed to him." *Id*. at 33-34.

The court initially sentenced Appellant to a consecutive term of six months' imprisonment, but subsequently granted Appellant's Post-Sentence Motion for modification of sentence and sentenced him to a term of three to six months' incarceration to run consecutive to the prior ICC sentence. The court also required Appellant to complete drug and alcohol and mental health assessments so he can address his mental health issues. *See* Order and Opinion on Motion for Reconsideration, 7/10/2020, at 12-13.

Appellant appealed. Both Appellant and the court complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

1. The trial court erred in ruling that the [Appellant's] case should not have been dismissed when the hearing was not scheduled within ten days of the filing of the charge or complaint of indirect criminal contempt, according to 23 Pa.C.S. § 6113(f).

2. The trial court erred in opening envelopes that were addressed to [Appellant], when the contents thereof were not used as the basis of the charges filed in this case.

3. The evidence presented in this case was insufficient to support the charge of indirect criminal contempt when the letters produced as evidence of the harassment of the victim were addressed to [Appellant] and not to the victim.

Appellant's Br. at 3.

"A charge of indirect criminal contempt consists of a claim that a violation of an order or decree of court occurred outside the presence of the court. Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for a violation of the protective order." *Commonwealth v. Baker*, 722 A.2d 718, 720-721 (Pa. Super. 1998) (*en banc*) (citations omitted). *See generally* 23 Pa.C.S. §§ 6101-6122 (Protection from Abuse Act).

We review a contempt conviction for a "plain abuse of discretion." *Commonwealth v. Haigh,* 874 A.2d 1174, 1177 (Pa. Super. 2005) (citation omitted). We give great deference to the trial court's findings. *Id*. at 1176. Our review is, thus, confined to a determination of whether the facts support the trial court's decision. *Id*. at 1177.

**Issue 1 – Timing of Hearing on ICC Complaint**

In his first issue, Appellant contends that the trial court should have dismissed the case because the hearing was not held within ten days of the filing of the ICC Complaint. Appellant's Br. at 6-8, citing 23 Pa.C.S. §§ 6107(a), 6113(f). We disagree.

"[A]s with those accused of other crimes, one charged with indirect criminal contempt is to be provided the safeguards which statute and criminal procedures afford." **Baker**, 722 A.2d at 720 (citation omitted). Thus, the PFA Act provides that when an individual is charged with indirect criminal contempt, "[a] hearing shall be *scheduled* within ten days of the filing of the charge or complaint of indirect criminal contempt." 23 Pa.C.S. § 6113(f) (emphasis added).

Section 6107(a) of the PFA Act provides that when a complainant first seeks a PFA order, "a hearing shall be *held* before the court" within ten business days of the filing of the petition[.]" 23 Pa.C.S. § 6107(a) (emphasis added). On the other hand, and relevant here, Section 6113(f) provides that, after a court has issued a PFA order and the subject against whom the order is directed violates the order, "[a] hearing shall be *scheduled* within ten days of the filing of the charge or complaint of indirect criminal contempt." 23 Pa.C.S. § 6113(f) (emphasis added). **See**, **e.g.**, **Stamus v. Dutcavich**, 938 A.2d 1098 (Pa. Super. 2007) (finding the court erred when it issued a rule to show cause rather than scheduling a contempt hearing after police filed an ICC complaint against the appellant).

In **Commonwealth v. Ortiz**, 802 A.2d 617 (Pa. Super. 2002), the trial court scheduled a hearing four days after the police officer filed the contempt charges but did not hold a hearing within ten days. The court dismissed the charges after concluding it had violated Section 6113(f). This Court reversed

the dismissal, holding that "a court satisfies the requirements of Section 6113(f) when it *schedules*, but not necessarily *holds*, the hearing within ten days of the filing of the charge or complaint." **Id**. at 619 (emphasis added).

The trial court here, relying on **Ortiz**, **supra**, concluded that it had properly scheduled the hearing in accordance with Section 6113(f). Specifically, it observed:

> The use of "scheduled" in Section 6113(f) as compared to the use of "held" in Section 6107(a) strongly suggests that the General Assembly intended "scheduled" to mean only that the proceeding be set for a hearing date within ten days, not that the proceeding need actually occur within ten days; if the General Assembly had desired such a result, it knew how to do so unambiguously by directing that such a proceeded shall be held within that period, just as it did in Section 6107(a).

Trial Ct. Op., dated 2/18/21, at 7-8.

We agree with the trial court's reasoning and analysis. On March 31, 2021, four days after the victim filed the ICC Complaint, the court scheduled the hearing for April 15, 2021. As in **Ortiz**, **supra**, the scheduling, thus, occurred within the ten-day window provided by Section 6113(f). Accordingly, Appellant's first issue garners no relief.

**Issue 2 – Court's admission of the contents of the unopened envelopes**

Appellant next asserts that the trial court improperly acted as an advocate when, after the victim testified, it allowed the prosecutor to open the envelopes. Appellant's Brief at 9. He contends that because neither the

victim nor the Commonwealth had opened the letters prior to the hearing, their contents were not relevant to the allegations in the ICC Complaint.

When presented with challenges to the admission of evidence, our standard of review is well-settled. "Admission of evidence is within the sound discretion of the trial court and we review the trial court's determinations regarding the admissibility of evidence for an abuse of discretion." *Czimmer v. Janssen Pharms., Inc.,* 122 A.3d 1043, 1058 (Pa. Super. 2015). To reverse an evidentiary ruling, "it must not only be erroneous, but also harmful or prejudicial to the complaining party." *Id*. We presume that the trial court acting as the fact-finder in a bench trial "know[s] the law, ignore[s] prejudicial statements, and disregard[s] inadmissible evidence." *Commonwealth v. McFadden*, 156 A.3d 299, 309 (Pa. Super. 2017) (citation omitted).

Only competent and relevant evidence is admissible at trial. *Czimmer*, *supra*, at 1058; Pa.R.E. 402. "Evidence is competent if it is material to the issue to be determined at trial. Evidence is relevant if it tends to prove or disprove a material fact." *Czimmer, supra*, at 1058. *See also* Pa.R.E. 401 (providing that "evidence is relevant if[ ] it has any tendency to make a fact more or less probable than it would be without the evidence; and [ ] the fact is of consequence in determining the action."). Further, "[r]elevant evidence is admissible if its probative value outweighs its prejudicial impact." *Czimmer, supra*, at 1058.

Relevant evidence will be considered unfairly prejudicial, and thus inadmissible, if it has "a tendency to suggest decision on an improper basis or to divert the [factfinder's] attention away from its duty of weighing the evidence impartially." *Id*.

Preliminarily, we reject Appellant's characterization of the trial court's actions as advocacy. Contrary to the Appellant's contention, the trial judge did not open the letters himself and "did not *sua sponte* direct that the letters be opened and their contents revealed, as suggested by [Appellant.]" Tr. Ct. Op. dated 2/18/21, at 13. Rather, the court stated that because the envelopes had been admitted as Commonwealth exhibits, the court gave its permission to open them "should either party desire it." *Id*. at 13. *See also* N.T. at 18.

In addition, the court clearly informed the parties at the end of the hearing of its limited consideration of the contents of the letters. Specifically, the court stated:

> [F]or purposes of my decision here today the content of the letters is considered for one reason exclusively and that is to the extent that the defendant has challenged here today, he has[,] through the arguments of counsel, [asserted] that the letters may not have been directed to [the victim] or cannot be attributed to him. The [c]ourt finds specifically that the content of those letters . . . in their reference to [the victim], referring to her talking about things that she did, satisfy the [c]ourt that [Appellant] and no one other than [Appellant] was the author of those letters and they've been sufficiently attributed to him[.]

N.T. at 33-34.

We see no abuse of discretion in the trial court's overruling Appellant's relevancy objection to the opening of the letters. Regardless of the substance

of the letters, the letters clearly established that Appellant was, in fact, the sender. Moreover, the letters corroborated the victim's testimony that the handwriting belonged to Appellant and provided clear corroborating evidence that he intended to violate the PFA. Further, our review indicates that the contents of the letters did not "divert the fact-finder's attention away its duty of weighing the evidence impartially." **Czimmer**, **supra**, at 1058. Accordingly, this issue merits no relief.[2]

**Issue 3 - Sufficiency of the Evidence**

Appellant next asserts that because the letters were addressed to him, not the victim, at an address he had once lived, and the Commonwealth presented only the victim's testimony and "no further analysis of the handwriting on the envelope[s]" beyond the victim's testimony "that she had lived with [Appellant] and thus knew his handwriting," the verdict is not supported by sufficient evidence. Appellant's Brief at 10, 12. He also concludes that his conduct was "*de minimis* and non-threatening" because

_____

[2] Appellant summarily states "[i]t is unclear whether he would have chosen to testify or whether his attorney would have changed any of his cross examination questions or strategies … had he known about the contents of the letters and had notice of those contents prior to the trial." Appellant's Br. at 9. Appellant's vague statement invites this Court to infer that he suffered unfair prejudice because the court allowed the letters to be opened. Because Appellant fails to develop an argument with any analysis or any citation to relevant authority to support his statement, we decline his invitation and conclude he has waived any argument he may have had regarding prejudice he may have suffered.

"the alleged victim did not open the letters, so she could not have been 'harassed' by them, as she did not know what the content of the letters were." Appellant's Brief at 11-12.[3]

Our standard of review is well-settled. We review a challenge to the sufficiency of the evidence to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom is sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt. *Commonwealth v. Brumbaugh*, 932 A.2d 108, 109 (Pa. Super. 2007). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Id.* at 109-110 (citation omitted).

_____

[3] Appellant relies on *Commonwealth v. Haigh*, 874 A.2d 1174 (Pa. Super. 2005), to support his claim that his conduct was "*de minimis* and non-threatening." Appellant's Brief at 11. In *Haigh*, a shackled husband appeared at an ICC hearing to plead guilty to two PFA violations, and asked the complainant, his wife of 31 years who had recently been diagnosed with cancer, how she was doing. The trial court found this inquiry to be a third violation of the PFA Order that had directed him to have no contact with her "at any location." On appeal, this Court concluded that under the particular circumstances—*i.e.,* at a location where the parties had to be present for a hearing, in the presence of the judge, prosecutor, and armed deputy sheriffs, among others—Appellant did not act in a threatening manner with wrongful intent to violate the PFA. Rather, he was acting out of concern for the health of his wife of 31 years. This Court characterized this contact as "*de minimis* and non-threatening," and concluded that the trial court abused its discretion in finding the appellant guilty of ICC. *Haigh* is factually distinct from the instant case. It, thus, provides no support for Appellant's sufficiency challenge.

"As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record." ***Commonwealth v. Von Evans***, 163 A.3d 980, 983 (Pa. Super. 2017) (citation omitted). "Therefore, we will not disturb the verdict unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." ***Id***. "We will reverse a trial court's determination only when there has been a plain abuse of discretion." ***Commonwealth v. Kolansky***, 800 A.2d 937, 939 (Pa. Super. 2002).

To establish indirect criminal contempt of a PFA Order, "the Commonwealth must prove: 1) the Order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the Order; (3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent." ***Brumbaugh***, 932 A.2d at 110.

Here, the trial court found that the Commonwealth had established each of the above elements. At the conclusion of the hearing, the court found (1) "based upon the testimony, . . . first that there is a … protection from abuse order that is clear and specific in its terms;" (2) that Appellant "has been on notice of those terms and specifically, as required in the protection from abuse order, is to have no contact whatsoever with [the victim];" (3) "beyond a reasonable doubt that [Appellant] sent these letters to the victim in this case [ ] as a volitional act in violation of the protection from abuse order; and (4)

"that he did so with wrongful intent." N.T. at 33. The court also found "beyond a reasonable doubt, based upon the testimony of [the victim] that these letters sent from the Erie County prison came from [Appellant]; that "they were addressed to the location where [the victim] was located; and they specifically violate the provision of the protection from abuse order requiring [Appellant] to have no contact whatsoever with [the victim]." *Id*. The court further found that "the series of letters, seven of them marked as exhibits here today, show [Appellant] engaging in a course of conduct including harassing, stalking type behavior" and for "all those reasons [Appellant] is guilty of indirect criminal contempt." *Id*.

We have reviewed the evidence in a light most favorable to the Commonwealth as the verdict winner, and all reasonable inferences drawn therefrom, and conclude the evidence sufficiently established each element of ICC beyond a reasonable doubt. It is undisputed that Appellant was aware of the PFA Order and, after having twice violated the Order for similar reasons, knew that the Order clearly and specifically informed him that he was to have no contact at all with the victim. Further, evidence found credible by the court established that Appellant volitionally sent the letters to the victim's address. Finally, as reasonably inferred from the number of letters sent within a short period of time, *i.e.*, 7 letters within 2 weeks, Appellant's intent was to harass and cause the victim to feel unsafe in her home. Accordingly, Appellant's sufficiency challenge fails to garner relief.

Having found no merit to any of Appellant's issues raised in this appeal, we affirm his Judgment of Sentence.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  8/20/2021