J-S18026-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                                :  PENNSYLVANIA
                                                :

             v.                            :

JAMES BEMBRY                      :

            Appellant           :  No. 1702 EDA 2022

Appeal from the Judgment of Sentence Entered May 19, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002772-2020,
CP-51-CR-0002773-2020

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                                :  PENNSYLVANIA
                                                :

             v.                            :

JAMES BEMBRY                      :

            Appellant           :  No. 1703 EDA 2022

Appeal from the Judgment of Sentence Entered May 19, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002772-2020,
CP-51-CR-0002773-2020

BEFORE:   PANELLA, P.J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:          **FILED AUGUST 15, 2023**

Appellant James Bembry appeals from the Judgment of Sentence

entered in the Philadelphia Court of Common Pleas on May 19, 2022, after a

jury convicted him of First-Degree Murder, Possession of an Instrument of

---

[*] Former Justice specially assigned to the Superior Court.

Crime ("PIC"), and Simple Assault.[1]  Appellant challenges the sufficiency and weight of the evidence supporting his murder conviction, raises an evidentiary issue, and argues that the court erred in denying him a continuance to obtain a witness.  After careful review, we affirm.[2]

We glean the relevant factual and procedural history underlying this appeal from the trial court's Pa.R.A.P. 1925(a) Opinion and the certified record.  On the afternoon of April 12, 2020, Appellant choked and beat his girlfriend, Toni Howard, at her home, located at 3850 Wyalusing Avenue in Philadelphia, where they both lived.  Ms. Howard's cousin, Trenina Black ("the Decedent"), was visiting at the time and told Appellant to stop hitting Ms. Howard.  Appellant told her to "mind her own business."  Appellant then took Ms. Howard's cell phone and left the house.  Ms. Howard also left the home, went next door where John Slade and his wife, Juanita Brooks-Slade

---

[1] 18 Pa.C.S. §§ 2502, 907(a), and 2701, respectively.

[2] The Commonwealth charged Appellant under two different docket numbers, only one of which pertained to the simple assault conviction.  Appellant filed two notices of appeal listing both docket numbers on each and because the notices complied with deviations sanctioned in **Commonwealth v. Johnson**, 236 A.3d 1141 (Pa. Super. 2020)(*en banc*), this Court opened corresponding dockets, No. 1702 EDA 2022 (murder conviction) and No. 1703 EDA 2022 (simple assault). We subsequently consolidated these appeals *sua sponte*. However, our review of Appellant's Pa.R.A.P. 1925(b) Statement, which is identically filed in each of this Court's dockets, indicates he is challenging only the murder conviction.  Appellant did not preserve any issues pertaining to his simple assault conviction.  Thus, any issues pertaining to that conviction that Appellant could have raised are waived pursuant to Pa.R.A.P. 1925(b)(4)(vii). **See Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998) (holding that issues not preserved in an appellant's Rule 1925(b) Statement are waived).

(collectively, "the Slades"), lived and borrowed some money. She returned home briefly and then went up the street to Bahia Johnson's home.

Appellant returned to the home shortly thereafter and the Decedent began yelling at Appellant outside the house regarding his abusive behavior toward women. Approximately fifteen minutes later, the Slades overheard the Decedent and Appellant fighting inside the house. Mr. Slade heard the Decedent scream out Ms. Slades' name three times and, immediately thereafter, heard seven loud thumps in succession followed by silence. Approximately ten minutes later, the Slades saw Appellant leave the home with two knives.

Ms. Slade went to Ms. Howard's home, knocked on the door, and, when no one answered, called 911. Ms. Howard returned home when she saw police vehicles parked outside her house. When she entered the home, she saw the decedent lying unconscious on the living room floor bleeding from her nose. Police officers immediately searched the house for other people and found none. They initially suspected that she had been stabbed somewhere until they found a bloody hammer within a few feet of the Decedent sticking out from underneath the couch. When medics arrived, they removed the Decedent's wig and discovered multiple lacerations on the right side of her head, as well as significant blood and brain tissue contained within the skull cap of the wig. The Decedent died that evening as the result of blunt injuries to her head.

The Commonwealth charged Appellant with the above crimes. At a pre-trial hearing on Appellant's motion to preclude the Slades from testifying that they saw Appellant with two knives as he left the home, the court and counsel engaged in a lively exchange regarding the relevance of that testimony to the murder at issue. *See* N.T. Hr'g, 5/6/22, at 38-47. Appellant's counsel argued that Appellant was not the one who committed the crime, so the Slades' observation that they saw Appellant leave the house after arguing with the Decedent was erroneous. The trial court, however, noted that their testimony was simply descriptive of their observation of Appellant after the argument and concluded that it would not preclude that testimony "at this point." The court, however, suggested that if the Slades testified about this observation, the court would provide the jury with a "strong cautionary instruction." *Id*. at 44, 47.

Appellant proceeded to a five-day jury trial beginning on May 16, 2022. The Commonwealth presented testimony from the Slades, the investigating police officers, a medical examiner, a DNA expert, and Ms. Howard. Relevant to the issue of whether it was Appellant who committed the crimes, two officers testified that upon entering the house and seeing the Decedent lying on the floor, they searched the entire home for other people and found no other individuals in the house.[3]

_____

[3] N.T., 5/17/22, at 18.

Ms. Howard testified, *inter alia*, that on the morning of the murder, the only people in the house were Appellant, the Decedent, and herself.[4] She also testified that after seeing the police cars on the street, she returned to her house but when she knocked, no one answered the door.[5] In addition, she testified that she told police that only Appellant had lived at the house with her for the year prior to the murder and that the police told her after searching the home that no one else was there.[6] Ms. Howard also testified that she and her mother were at Ms. Johnson's house on the evening following the murder when Appellant, using Ms. Howard's cell phone, called Ms. Howard's mother and in response to a question posed by her mother, Appellant stated, referring to the Decedent, that "she get what she get." N.T. Trial, 5/18/22, at 25-27.

On cross-examination, Ms. Howard testified that a man named Adel used to live in the house, but he did not have keys and had moved out of the house a couple of weeks before the murder. *Id*., at 38, 41. In response to defense counsel's question "Did you ever have a man named Vincent who came and stayed?" Ms. Holmes responded "yes." *Id*. at 41. She also testified that at the time of trial, Vince was living in the house. *Id*. at 44.

---

[4] N.T., 5/18/22, at 15, 62.

[5] *Id*. at 21. Ms. Howard did not have a house key and after no one answered her knock on the door, she used the neighbor's credit card to open the lock. *Id*. at 27.

[6] *Id*. at 14, 22-23.

At the close of the Commonwealth's case on the afternoon of the third day of trial, after the court recessed for lunch, Appellant informed the court that his subpoenaed witness, Ms. Johnson, had not appeared. Although Appellant's counsel had subpoenaed Ms. Johnson to appear on the first day of trial, she did not appear on that day or the next. Appellant's counsel informed the judge that that he and his staff had received inconsistent communications from Ms. Johnson but stated that she had made "certain promises" to appear. **Id**., at 187. Counsel then stated, "If she's here in time I will put her on the stand. If not, I understand the schedule." **Id**. The court "then delayed the case over the lunch hour to afford [Appellant] time to secure her appearance." Tr. Ct. Op., 8/29/22, at 7.

After Ms. Johnson failed to appear after the lunch break, Appellant asked for a one-day continuance to give him one more day to obtain Ms. Johnson's presence. Appellant did not inform the court that she was an essential witness. The court denied the continuance request, noting, among other things, that at no time did Appellant ask the court to issue a bench warrant despite Ms. Johnson's failure to appear over three days.[7]

Appellant presented testimony from his DNA expert who opined that she, like the Commonwealth's expert, could not exclude Appellant from the DNA mixture found on the handle of the hammer.

_____

[7] N.T., 5/18/22, at 187.

The jury found Appellant guilty of the above offenses and the court sentenced him to life imprisonment without the possibility of parole for the murder conviction.[8]

Appellant filed notices of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

1. Did the evidence fail to establish beyond a reasonable doubt that Appellant killed [the Decedent], that he had the specific intent to kill[the Decedent], or that he possessed the hammer found inside 3850 Wyalusing Avenue with the intent to use it criminally, and was any finding of guilty on such evidence the product of conjecture and speculation?

2. Did the trial court abuse its discretion in not granting Appellant's post-sentence motion for a new trial, as the verdict was so contrary to the weight of the evidence as to shock one's sense of justice, where the testimony was based on conjecture and speculation?

3. Did the trial court abuse its discretion in denying Appellant's motion *in limine* to exclude as evidence two knives unrelated to the murder?

4. Did the lower court abuse its discretion, err and deny Appellant his state and federal constitutional right to present a defense when it denied a continuance requested by the defense to secure attendance of an essential defense witness?

Appellant's Br. at 6.

_____

[8] The court also imposed concurrent sentences of one to two years for each for the PIC and Simple Assault convictions. *See* N.T. Trial, 5/19/22, at 84.

A.

In his first issue, Appellant challenges the sufficiency of the evidence supporting his first-degree murder conviction. *See* Appellant's Br. at 16-22.

"A claim challenging the sufficiency of the evidence is a question of law." ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000). We review a sufficiency challenge *de novo*, and our scope of review is limited to the evidence of record and all reasonable inferences arising therefrom viewed in the light most favorable to the Commonwealth as verdict winner. ***Commonwealth v. Rushing***, 99 A.3d 416, 420-21 (Pa. 2014).

The evidence is sufficient if it can support every element of the crime charged beyond a reasonable doubt. ***Commonwealth v. Sebolka***, 205 A.3d 329, 337 (Pa. Super. 2019). "The Commonwealth may sustain its burden by means of wholly circumstantial evidence." ***Id.*** "Significantly, we may not substitute our judgment for that of the factfinder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of [an appellant's] crimes beyond a reasonable doubt, the appellant's convictions will be upheld." ***Id.*** (citation omitted). Further, the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence, as any doubts regarding a defendant's guilty may be resolved by the fact finder unless the evidence is so inconclusive that, as a matter of law, no probability of guilty may be drawn. ***Commonwealth v. Sipps***, 225 A.3d 1110, 1113 (Pa Super. 2019). First-Degree Murder is a "willful, deliberate[,] and

- 8 -

premeditated killing," *i.e.*, a killing committed with the specific intent to kill. 18 Pa.C.S. § 2502(a), (d); ***Commonwealth v. O'Searo***, 352 A.2d 30, 35 (Pa. 1976). In order to sustain a First-Degree Murder conviction, the Commonwealth's evidence must establish that "(1) a human being was killed; (2) the accused caused the death; and (3) the accused acted with malice and the specific intent to kill*." **Commonwealth v. Poplawski***, 130 A.3d 697, 709 (Pa. 2015) (citation omitted). "The jury may infer the intent to kill based on the use of a deadly weapon on a vital part of the victim's body." ***Id.*** at 709. ***See also Commonwealth v. Washington***, 927 A.2d 586, 607 (Pa. 2007) (observing that "the critical inquiry is the **use** of a deadly weapon on a vital part of the body, not the intentional aiming of the weapon at a vital part of the body.") (internal citation omitted and emphasis in original).

Appellant argues that the evidence presented at trial did not establish "beyond a reasonable doubt that Appellant killed [the Decedent], that he had the specific intent to kill [the Decedent], or that he possessed the hammer found inside [the home] with the intent to use it criminally." Appellant's Br. at 16.

The trial court addressed Appellant's challenge to the sufficiency of the evidence supporting his murder conviction and concluded it was without merit. The court explained:

> [Appellant] acted with the specific intent to kill by using a deadly weapon on a vital part of the decedent's body when he repeatedly smashed the [D]ecedent's skull with a hammer seven times causing severe damage to her brain. On two occasions, the [D]ecedent confronted [Appellant] about physically assaulting

- 9 -

women and the second resulted in her death. She first confronted [Appellant] when he was beating and choking Howard a few hours earlier and the second occurred while they were alone in the house. Two witnesses heard [Appellant] and the [D]ecedent arguing about his physical abuse of Howard prior to the murder. Mr. Slade heard them begin to fight and heard the [D]ecedent scream his wife's name three times right before seven distinct thumps. Following the thumps, Mr. Slade did not hear the [D]ecedent again and did not hear any more fighting. [Appellant] was the last person seen leaving the house before the [D]ecedent was found unconscious. [Appellant] could not be excluded as a contributor of the DNA found on the handle of the hammer used to kill the [D]ecedent. [Appellant's] use of a deadly weapon on a vital part of the [D]ecedent's body and the number of times he struck the decedent shows that the evidence is sufficient to sustain the First-Degree Murder conviction.

Tr. Ct. Op., dated 8/29/22, at 10.

The record supports the trial court's analysis and conclusion. Appellant acknowledges that circumstantial evidence may sustain a conviction but argues that "the evidence presented by the Commonwealth is susceptible to multiple interpretations, and points to possible innocent explanations as much as it does to guilty." Appellant's Br. at 18. In support, he emphasizes what the investigation and evidence did not show. *See*, *e.g.*, *id.*, at 19 (noting lack of blood on Appellant's clothes at the time of his arrest and Officer Reed's admission that he did not look for bloody clothing in or outside the house), Appellant's Br. at 20 (inability of the Commonwealth's expert to expressly state that his DNA was on handle of the hammer), Appellant's Br. at 22 ("absence of blood spatter evidence tying Appellant to the murder" and "incompleteness of the police investigation of other possible suspects").

Appellant misunderstands our standard of review. We review the sufficiency of the evidence that **was** submitted at trial, not evidence that was not submitted at trial. Here, the Commonwealth presented evidence from which the jury reasonably inferred that it was Appellant who killed the Decedent. This evidence included testimony from Ms. Howard's neighbors regarding the events that transpired before, during, and after Appellant's attack, *i.e.*, their observation of Appellant returning to the house while the Decedent was on the porch, hearing Appellant and the Decedent arguing loudly before the decedent screamed out to Ms. Slade for help followed by repetitive thuds and then by silence. **See** N.T. Trial, 5/17/22, at 115-169 (testimony of Ms. Slade) and 218-278 (testimony of Mr. Slade). The Commonwealth also presented testimony from Ms. Howard about Appellant's volatile behavior shortly before the murder, and her hearing Appellant state in reference to Decedent that "she get what she get." N.T., 5/18/22, at 25-27. In weighing this testimony, the jury reasonably inferred that Appellant killed Decedent.

When combined with the testimony from the Philadelphia City medical examiner regarding the cause of death, the evidence obtained from the hammer, and the photographs of the skull fragments and brain matter found in Decedent's wig, we conclude the evidence is sufficient to support the jury's finding that Appellant is guilty of First-Degree Murder. **See** N.T. Trial 5/16/22,

at 64-82. *Poplowski*, 130 A.3d at 709. Appellant's sufficiency challenge, thus, warrants no relief.

B.

Appellant also challenges the weight of the evidence, asserting that the court erred in denying his post-sentence motion. Appellant provides the same argument as above when he argues that due to the lack of certain evidence, the verdict was "based on conjecture and speculation." Appellant's Br. at 24. No relief is warranted.

When considering challenges to the weight of the evidence, we apply the following precepts. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015) (citation omitted). Resolving contradictory testimony and questions of credibility are matters for the finder of fact. *Commonwealth v. Hopkins*, 747 A.2d 910, 917 (Pa. Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. *Talbert*, 129 A.3d at 546. A challenge to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict but contends, nevertheless, that the verdict is against the weight of the evidence. *Commonwealth v. Landis*, 89 A.3d 694, 699 (Pa. Super. 2014) (citation omitted).

Appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this Court does not review the underlying question of whether the verdict is against the weight of the evidence. *Tarbert*, 129 A.3d at 545-46. "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence." *Id.* at 546 (citation omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." *Id.* (citation omitted).

Furthermore, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Id.* (citation omitted). As our Supreme Court has made clear, reversal is only appropriate "where the facts and inferences disclose a palpable abuse of discretion[.]" *Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014) (emphasis omitted).

The trial court concluded that "the jury's verdict is not so contrary to the evidence as to shock one's sense of justice." Tr. Ct. Op. at 11. The court observed:

> The evidence of [Appellant's] guilt was overwhelming. As discussed above, the evidence established that [Appellant] used a

hammer repeatedly to crush the [D]ecedent's skull. The [D]ecedent confronted [Appellant] about physically assaulting women, and [Appellant] murdered her as a result. Two witnesses heard the argument between [Appellant] and the decedent, one witness heard [Appellant] hit the [D]ecedent with a hammer seven times, and [Appellant] was the last person seen leaving the house before the [D]ecedent was discovered lying unconscious with severe head injuries. [Appellant] could not be excluded as a contributor of the DNA on the murder weapon. Accordingly, [Appellant's] claim that his conviction is against the weight of the evidence fails.

*Id*.

Appellant's summary argument that the verdict was based on "conjecture and speculation" fails to convince this Court that the trial court abused its discretion in denying his post-sentence motion. In light of the above evidence, and the jury's unassailable credibility and weight determinations, we agree with the trial court that the verdict does not shock the conscience. Accordingly, Appellant's weight claim fails to warrant relief.

C.

Appellant next asserts that the trial court abused its discretion in allowing the Commonwealth to present testimony from the Slades that they saw Appellant walking away from the house with two knives following the Decedent's murder. Appellant's Br. at 25-31. He observes that "the knives were not linked to the murder nor were they suitable to its commission." Appellant's Br. at 27. He contends that the testimony about the knives was not relevant to prove Appellant's identity because Mr. Slade testified that he saw Appellant leaving the house following the argument with the Decedent,

- 14 -

knew Appellant as Ms. Howard's boyfriend who had lived with her for the previous eight months, and had seen Appellant every day over that period. *Id*. at 28. Appellant concludes that the admission of the testimony regarding the knives was prejudicial because it "paint[ed] Appellant[] as "a dangerous character, prepared for violence, who was capable of murder," and suggested Appellant's "involvement in unspecified acts of violence." *Id*. at 27.

It is well-settled that the admission of evidence is within the discretion of the trial court. *Commonwealth v. Woodard*, 129 A.3d 480, 494 (Pa. 2015). "An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Id.* An abuse of discretion by the trial court, and a showing of resulting prejudice, constitutes reversible error. *Commonwealth v. Glass*, 50 A.3d 720, 724-25 (Pa. Super. 2012). Where the trial court indicates its reasons for admitting the evidence, "our scope of review is limited to an examination of the stated reasons." *Commonwealth v. Minerd*, 753 A.2d 225, 229 (Pa. 2000).

The overriding principle in determining if the trial court should admit evidence involves "a weighing of the probative value versus prejudicial effect. We have held that the trial court must decide first if the evidence is relevant and, if so, whether its probative value outweighs its prejudicial effect." *Commonwealth v. Serge*, 896 A.2d 1170, 1177 (Pa. 2006). Generally, all

relevant evidence is admissible. Pa.R.E. 402. "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact." *Commonwealth v. Minerd*, 753 A.2d 225, 230 (Pa. 2000) (citation omitted); Pa.R.E. 401. However, relevant evidence may be excluded "if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

Relevant evidence will be considered unfairly prejudicial, and thus inadmissible, if it has "a tendency to suggest decision on an improper basis or to divert the [factfinder's] attention away from its duty of weighing the evidence impartially." *Czimmer v. Janssen Pharms., Inc.,* 122 A.3d 1043, 1058 (Pa. Super. 2015).

Here, Ms. Slade testified that she saw Appellant leave the house with two "butcher knives" which he put in his back pocket as he walked away. N.T. Trial, 5/17/22, at 130. She then testified that she became concerned after seeing the knives and called 911, fearing that Appellant had done something to the decedent. *Id*. Mr. Slade testified that he saw Appellant had two "kitchen knives" in his back pocket when Appellant left the house following the argument with the Decedent. *Id*. at 231. The knives were not mentioned

again until the closing argument presented by Appellant's counsel. ***See*** N.T.

Trial, 5/18/22, at 235.

In addressing Appellant's issue raised on appeal, the trial court

concluded that it properly exercised its discretion in allowing the testimony.

The court reasoned as follows:

> This [c]ourt found that testimony concerning the knives was admissible because they were probative in establishing what Mr. Slade and Mrs. Brooks-Slade observed and how they identified [Appellant]. N.T., 5/6/22, at 38-48. The knives were relevant to their description of what occurred, how [Appellant] appeared when he left the house, and how they knew it was [Appellant]. The knives were also probative because they both saw [Appellant] leave the house with the knives shortly after they heard a fight in the house, which prompted them to call 911 since they believed that the [D]ecedent may have been injured by [Appellant]. [Appellant] was not prejudiced by the introduction of testimony about the knives because the Commonwealth did not attempt to argue that the knives were used to murder or threaten the [D]ecedent or that he was more likely to have committed the murder because he had these knives. ***See Commonwealth v. Christine***, 125 A.3d 394, 401 (Pa. 2015) (Possession of a weapon may be admissible on other grounds even without an inference that the weapon was likely used in the commission of the crime.); ***see also Commonwealth v. Broaster***, 863 A.2d 588 (Pa. Super. 2014) (Handgun discarded by defendant was relevant to identify defendant and connect him with crime, even though handgun was not murder weapon.).

Tr. Ct. Op. at 6.

We discern no abuse of the court's discretion in denying the motion *in*

*limine* seeking to preclude testimony about the knives. The testimony about

the knives establishes the reason that the Slades were concerned for the

welfare of the Decedent and called the police. Further, our review of the trial

testimony reveals that the mention of the knives at trial was fleeting and did

not draw the jury's focus away from the material facts at issue, *e.g.*, that it was Appellant who was in the house arguing with the Decedent and that she died from hammer blows to her skull and brain. Appellant's argument that he suffered prejudice because of the Slades' fleeting mention that he possessed knives is unconvincing. Accordingly, Appellant's challenge to the admission of this evidence fails to garner relief.

D.

In his final issue, Appellant contends that the court violated his state and federal constitutional right to present a defense by denying his request for a one-day continuance to provide additional time for Ms. Johnson to appear to testify on behalf of Appellant. Appellant's Br. At 31-41. Appellant contends that Ms. Johnson would have provided testimony that two other people had been at the "scene of the murder who may have committed the murder and tampered with evidence." *Id*. at 33. In support, he states, without reference to time, that Ms. Johnson went to Ms. Howard's house on the day of the murder to invite her over and "Vincent opened the door." *Id*. at 32. Appellant also states that Ms. Johnson "was unequivocal that Vincent was at the house when she arrived to invite [Ms. Howard] over and that he was there when the two of them left to go over to her house." *Id*. at 33. Thus, he argues, Ms. Johnson's testimony was essential to bolster his defense that someone else committed the murder. *Id*. This argument fails to warrant relief.

Our Supreme Court has explained our standard of review for denials of requests for continuances.

> The grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of discretion. As we have consistently stated, an abuse of discretion is not merely an error of judgment. Rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record[.]

*Commonwealth v. McAleer*, 748 A.2d 670, 673 (Pa. 2000) (internal quotations and citations omitted).

Accordingly, "[i]t has long been the view of [the Pennsylvania Supreme Court] that a decision to grant or deny a continuance to secure a witness is a matter within the sound discretion of the trial court[.]" *Commonwealth v. Small*, 741 A.2d 666, 682 (Pa. 1999). A reviewing appellate court considers the orderly administration of justice as well as the defendant's right to have adequate time to prepare a defense. *Id.* at 682-83.

When deciding a motion for a continuance to secure a witness, the trial court is guided by the following factors: "(1) the necessity of the witness to strengthen the [defendant's] case; (2) the essentiality of the witness to the [defendant's defense]; (3) the diligence exercised to procure the witness' presence at trial; (4) the facts to which the witness could testify; and (5) the likelihood that the witness could be produced [at court if a continuance were granted]." *Commonwealth v. Norton*, 144 A.3d 139, 143-44 (Pa. Super. 2016)(citation omitted).

The trial court here addressed Appellant's claim as it was raised in his Rule 1925(b) Statement by noting that Ms. "Johnson was not an essential witness and her testimony likely would not have strengthened [Appellant's] case." Tr. Ct. Op. at 7.[9]  The court observed:

> [Ms.] Johnson's only connection to [Appellant's] case was that [Ms.] Howard was at her house when the decedent was murdered, and she was present when [Appellant] called [Ms.] Howard's mother on the phone on the night of the murder.  There was no evidence presented which showed th[at Ms.] Johnson witnessed the murder or had any other relevant information about the case. Trial counsel did not offer any additional information about what he expected [Ms.] Johnson to testify to or how her testimony was important to [Appellant's] case.  [Ms.] Johnson's testimony would have been cumulative of the testimony already presented at trial. [Ms.] Howard testified about [Appellant] calling her mother and that she was across the street at Johnson's house at the time of the murder.  . . .
>
> [Appellant] did not establish that [Ms.] Johnson was likely to appear if a continuance were granted.  [Appellant's] trial counsel stated that he had text and phone call communications with [Ms.] Johnson in which she stated that she would appear, but, despite being subpoenaed, she failed to do so for three days.  Based on the information before this [c]ourt, it was highly unlikely that [Ms.] Johnson would appear even if a continuance were granted. Therefore this [c]ourt did not abuse its discretion in denying [Appellant's] request for a continuance.

Tr. Ct. Op. at 7-8.

The reasoning of the trial court is supported by the record.  In asking for the continuance, Appellant made a simple request to the court to allow one

---

[9] Appellant's Rule 1925(b) Statement provides: "The lower court abused its discretion, erred and denied appellant his state and federal constitutional right to present a defense when, it denied a continuance requested by the defense to secure attendance of an essential defense witness."

more day for Ms. Johnson to show up. N.T., 5/18/22, at 187. He never argued that Ms. Johnson was an essential witness to his defense: he never provided the court with an explanation of how Ms. Johnson would strengthen his case and never explained to the court how Ms. Johnson was a material witness to the murder. Moreover, Appellant never informed the court as to "the facts to which [Ms. Johnson] could testify." **Norton**, ***supra*** at 144. Accordingly, we conclude that the trial court properly exercised its discretion in denying the continuance request. Appellant's fourth issue warrants no relief.

E.

In sum, the record contains sufficient evidence to support the jury's verdict of guilty on the First-Degree Murder charge, and that verdict does not shock our conscience. In addition, we conclude that the trial court did not abuse its discretion in denying Appellant's motion for a continuance and his request to preclude the Slades' testimony about the knives. Further, Appellant waived any challenges to his simple assault conviction he could have raised by failing to preserve them in a Pa.R.A.P. 1925(b) Statement. We, thus, affirm the Judgments of Sentence imposed at CP-51-CR-0002772-2020 and CP-51-CR-0002773-2020.

Judgments of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/15/2023</u>